## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION

| | |
|---|---|
| DONNA DISSELKAMP, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No.3:18-cv-048-GNS-CHL |
| ) | |
| NORTON HEALTHCARE, INC., *et al.*, ) | |
| ) | |
| Defendants. ) | |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF
## UNOPPOSED MOTION FOR FINAL CERTIFICATION AND
## FINAL APPROVAL OF CLASS SETTLEMENT

**TABLE OF CONTENTS**

TABLE OF CONTENTS ..................................................................................................... i
TABLE OF AUTHORITIES ............................................................................................... ii
I.  Background ................................................................................................................. 1
II. The Litigation and Mediation ..................................................................................... 2
III. Settlement Terms ........................................................................................................ 4
    A.  Monetary Relief ................................................................................................ 4
Argument ........................................................................................................................... 6
IV. All Relevant Factors Favor Approval ........................................................................ 7
    a. The Parties Negotiated At Arm's Length and There is No Risk of Fraud or Collusion ............................................................................................................ 7
    b.  The Complexity, Expense, and Likely Duration of the Litigation Weigh in Favor of Settlement ............................................................................................ 8
    c. The Parties Engaged in Enough Discovery for the Plaintiffs to Sufficiently Evaluate the Case .............................................................................................. 10
    d.  The Settlement is Reasonable Given the Likelihood of Plaintiffs' Claims and the Existence of Defendants' Defenses .................................................................. 11
    e.  The Opinions of Class Counsel and Class Representatives, and the Reaction of Absent Class Members, Support Approval ....................................................... 13
V. Final Certification of the Class ................................................................................. 14
VI.  Conclusion ................................................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**

*Bowling v. Pfizer, Inc.*, 143 F.R.D. 141 (S.D. Ohio 1992) ............................................................. 8

*Clark v. Duke Univ.*, 2019 U.S. Dist. LEXIS 105792 (M.D.N.C. June 24, 2019) ......................... 4

*Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977) ......................................................................... 11

*Deja Vu Servs., Inc*., 925 F.3d 886 ............................................................................................... 11

*Dewald v. Time Warner Cable Inc.,* 2021 U.S. Dist. LEXIS 32459 (S.D. Ohio 2021) .................. 8

*Disselkamp v. Norton Healthcare, Inc*., 2019 U.S. Dist. LEXIS 129519 (W.D.Ky. 2019). ........ 13

*Does 1-2 v. Deja Vu Servs., Inc*., 925 F.3d 886 (6th Cir. 2019) ..................................................... 8

*Gascho v. Glob. Fitness Holdings*, LLC, 822 F.3d 269 (6th Cir. 2016) .................................... 7, 9

*Glazer v. Whirlpool Corp. (In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*), 722 F.3d 838 (6th Cir. 2013) .............................................................................. 14

*Granada Investments, Inc. v. DWG Corp*., 962 F.2d 1203 (6th Cir. 1992) ................................... 6

*Griffin v. Flagstar Bancorp, Inc*., 2013 U.S. Dist. LEXIS 173702 2013 WL 6511860 (E.D. Mich. Dec. 12, 2013) ........................................................................................ 11, 13

*In re Amazon.com, Inc., Fulfillment Ctr. Fair Labor Standards Act (FLSA) & Wage & Hour Litig*., No. 3:14-CV-290-DJH, 2016 WL 9558953 (W.D. Ky. Oct. 31, 2016) ................. 7

*In re Cardizem CD Antitrust Litig*., 218 F.R.D. 508 (E.D. Mich. 2003) ....................................... 6

*In re Corrugated Container Antitrust Litig*., 643 F.2d 195 (5th Cir. 1981) ................................ 10

*In re NFL Players Concussion Injury Litig*., 821 F.3d 410 (3d Cir. 2016). ................................ 10

*In re Telectronics Pacing Sys*., 137 F.Supp.2d 985 (S.D. Ohio 2001) .......................................... 7

*Johnson v. Providence Health & Servs*., 2019 U.S. Dist. LEXIS 164737 (W. D. Wash. July 9, 2019) ..................................................................................................................... 5

*Kelly v. Johns Hopkins Univ*., 2020 U.S. Dist. LEXIS 14772 (D. Md. Jan. 28, 2020) ................. 5

*Leonhardt v. ArvinMeritor, Inc*., 581 F.Supp.2d 818 (E.D. Mich. 2008) ........................................ 7

*Marro v. New York State Teachers' Ret. Sys*., 2017 U.S. App. LEXIS 24073 (6th Cir. Nov. 27, 2017) ................................................................................................................................ 9

*New York State Teachers' Ret. Sys. v. Gen. Motors Co.,* 315 F.R.D. 226 (E.D. Mich. 2016) ... 9, 13

*Olden v. Gardner*, 294 Fed. Appx. 210 (6th Cir. 2008) ................................................................ 10

*Pfeil v. State St. Bank & Trust Co*., 806 F.3d 377 (6th Cir. 2015) ..................................... 11, 13, 14

*Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C*., 636 F.3d 235 (6th Cir. 2011) .......... 11

*Robinson v. Shelby County Bd. of Educ*., 566 F.3d 642, 648 (6th Cir. 2009) ................................. 6

*Sacerdote v. New York Univ.,* 328 F. Supp. 3d 273 (S.D.N.Y. 2018) .......................................... 12

*Sheick v. Auto. Component Carrier LLC*, 2010 U.S. Dist. LEXIS 110411 (E.D. Mich. 2010) ................................................................................................................................................ 11

**Treatises**

Herbert Newberg & Alba Conte, Newberg on Class Actions § 11.51 (3d ed. 1992) ..................... 7

Newberg on Class Actions § 13:43 (5th ed. 2016) ......................................................................... 7

# I. BACKGROUND

Plaintiffs brought this action against Defendants Norton Healthcare, certain members of the Board of Directors of Norton Healthcare ("the Board"), and the Norton Healthcare Retirement Committee ("the Retirement Committee") ((Norton Healthcare, the Board, and the Retirement Committee are referred to collectively as the "Norton Defendants"), fiduciaries to the Plan (FAC ¶¶ 25-30),;[1] and against Defendants Lockton Investment Advisors, LLC, and Lockton Financial Advisors, LLC (collectively, "Lockton Defendants" or Lockton Defendant; the Lockton Defendant together with the Norton Defendants, the "Defendants"), the Plan's financial advisors. (*Id.* ¶31).

Plaintiffs sued alleging that: (1) the Defendants made investment decisions that diverted funds from the Plan to pay excessive fees to service providers; (2) the Defendants selected the wrong share class of multiple different funds; (3) the Defendants failed to control administrative expenses; and (4) the Defendants maintained an underperforming proprietary stable value product. (FAC ¶¶41-82).

The Plaintiffs submit this Memorandum in support of their Motion for Final Class Certification and Final Settlement Approval. The settlement reached in this case provides substantial monetary relief through a $5.75 million Gross Settlement Amount. Also, after the Plaintiffs sued, the Defendants made significant improvements to the Plan.

# II. THE LITIGATION AND MEDIATION

On January 22, 2018, the Plaintiffs filed their first complaint. (DN 1.) Roughly two years of hard-fought litigation and lengthy negotiations ensued.

---

[1] Plaintiffs referred to the Retirement Committee in the FAC as the "Norton Healthcare Retirement Plan Retirement Committee." Norton has since pointed out that the Retirement Committee's precise name is the "Norton Healthcare Retirement Committee." See fn 1 of Norton's Answer, DN 73.

1

On March 20, 2018, the Norton Defendants filed a motion to dismiss. (DN 19.) In response, on April 10, 2018, the Plaintiffs filed their FAC. (DN 20.) On July 16, 2018, the Defendants filed new motions to dismiss in response (DN 31, Lockton Defendants MTD, and DN 32, Norton Defendants MTD) and both motions were fully briefed. (DN 38 (Plaintiffs' response filed on September 14, 2018, to Norton Defendants' MTD); DN 39 (Plaintiffs response filed on September 14, 2018, to Lockton Defendants' MTD); DN 44 (Lockton Defendants' reply filed on October 29, 2018); DN 45 and 46 (Norton Defendants' reply and corrected reply both filed on October 29, 2018); DN 51 (notice of supplemental authority filed by Norton on November 26, 2018); DN 54 (Plaintiffs' motion to file sur-reply with tendered sur-reply filed on December 20, 2018); DN 55 (Norton Defendants' response filed on January 10, 2019, to motion to file sur-reply); DN 56 (Plaintiffs' notice of supplemental authority filed on May 23, 2019); DN 58 (Norton Defendants' response filed on June 3, 2019, to Plaintiffs' notice of supplemental authority); DN 59 (Plaintiffs' reply filed on June 20, 2019, to Norton Defendants' response to DN 56); DN 61 (Lockton Defendants' response filed on June 20, 2019, to Plaintiffs' supplemental authority); and DN 64 (Plaintiffs' reply filed on July 2, 2019, to DN 61).

On August 2, 2019, this Court granted in part and denied in part the Defendants' motions to dismiss. (DN 66.) The Court partially granted the motions with regard to *Count II*'s duty of loyalty claim. (*Id.*). The Court denied the Defendants' motions with regard to all other counts. (*Id*).

On August 6, 2019, this Court made a referral to U.S. Magistrate Judge Colin H. Lindsay, for resolution of all litigation planning issues, entry of scheduling orders, and resolution of all non-dispositive matters, including discovery issues. (DN 67.)

On September 5, 2019, the Norton Defendants and the Lockton Defendants filed their answers to the FAC (DN 73 and DN 74, respectively; Lockton Defendants' Amended Answer, DN 75.). On October 8, 2019, Magistrate Judge Lindsay entered a scheduling order. (DN 80.) On October 9, 2019, Plaintiffs and Defendants exchanged their F.R.C.P. 26(a)(1) disclosures.

All parties in this case recognized from the outset that an early resolution could be in their best interests. An early resolution would provide the Class guaranteed relief without the need to run up what could amount to hundreds of thousands –or even millions—in expenses. Early resolution also avoids the risks inherent in summary judgment and appeals and allows the Defendants to focus on providing class relief as opposed to spending millions in defense. To explore the possibility of settlement, the parties began the expedited exchange of both formal and informal discovery.

On February 27, 2020, the parties held an initial mediation session with parties, counsel of record, in-house counsel, and adjusters present, before the mediator, John Van Winkle, in Louisville, Kentucky. No settlement was reached at that first mediation. Throughout 2020, though, the parties engaged in additional discovery and settlement negotiations.

On November 11, 2020, the parties held a second mediation with Mr. Van Winkle. This time the parties were able to reach a settlement in principle. As a part of that settlement in principle the Plaintiffs and Defendants agreed to the conditional dismissal with prejudice of Lockton Financial Advisors, LLC and the Individual Norton Defendants prior to the filing of this proposed settlement, certification of the settlement class and the payment of any settlement funds. Those dismissals have since been filed.

## III. SETTLEMENT TERMS

### A. *Monetary Relief*

The Defendants will deposit $5,750,000.00 ("Gross Settlement Amount") in an interest-bearing settlement account (the "Settlement Account"). From the Settlement Account, funded by the Defendants and their insurers (the "Settlement Fund"), monies will be paid out pursuant to the terms of the Settlement Stipulation ("Settlement Agreement"), when and if finally approved by this Court. The Settlement Fund will be used to pay the recoveries to Class Members, as well as Class Counsel's attorneys' fees and expenses, certain Administrative Expenses of the Settlement, and the Class Representatives' Compensation, as described in the Settlement Agreement. The Settlement Fund will be distributed according to the Settlement Agreement terms. DN 116-2. No Settlement Fund monies will revert back to any Defendant or Insurer.

The majority of Class Members will automatically receive distributions directly into their tax-deferred retirement accounts. Those who previously left the Plan and no longer have an active account will be given the option to receive their distributions in the form of a check made out to them individually or as a roll-over into another tax-deferred account. The Settlement Agreement thereby seeks for Class Members to receive or have the option to receive- their distributions with a tax-deferred status in an account that will bear returns on that distribution before the Class Member actually accesses the money. This further enhances the monetary recovery.

This monetary relief is a significant achievement in a case like this, particularly in light of class recoveries comparable in size to that of the Plan. Because these cases turn on lost investment funds, cases that return larger percentages to participants of a plan are, in reality, more successful.

As an illustration, let us refer to a settlement in which the gross settlement was $10,650,000. *Clark v. Duke Univ*., 2019 U.S. Dist. LEXIS 105792, *9 (M.D.N.C. June 24, 2019). While the *gross amount* of the *Duke* settlement was more than that in the current case, at year end 2019 the Duke plan had almost five billion dollars in total assets; much larger than the Norton Plan. The settlement in *Duke,* was a return of .23%, or 23 basis points ("bps").

The Norton Plan at issue in the case at bar, by contrast, ended 2019 with total assets of just over one billion dollars ($1,149,764,880). The return to the Norton plan is 51 bps, i.e., more than double what was given final approval in *Duke*. *See also*, *Kelly v. Johns Hopkins Univ*., 2020 U.S. Dist. LEXIS 14772 (D. Md. Jan. 28, 2020) ($14,000,000 recovery/$5,880,973,425.00 plan size = 23 bps); *Johnson v. Providence Health & Servs*., 2019 U.S. Dist. LEXIS 164737 (W. D. Wash. July 9, 2019) ($2,250,000 recovery/$5,141,599,523 plan size = .004 bps).[2]

While cases like this often seek injunctive relief as part of the settlement, that is not necessary here. During the almost three years from the filing of this suit on January 22, 2018, and its settlement in principle on November 11, 2020, the Defendants restructured the Plan, adding target date funds, reconfiguring their Qualified Default Investment Alternative ("QDIA"), and significantly improving the Plan's stable value fund. Exhibit 1 at 27-45.

The value these changes have to the Plan can also be demonstrated in monetary terms. For starters, one of the Plaintiffs' concerns was that the Principal Fixed Income Guaranteed Option ("PFIGO") was a general account product, meaning that, if Principal were to go bankrupt, Principal's creditors could go after the Plan's assets in the PFIGO. At year-end 2018, the Plan had $189,405,512 in the PFIGO. The Plaintiffs lawsuit sought, in part, to protect Plan funds from

---

[2] A table of similar settlements is attached as Exhibit 4 that further demonstrates the settlement's reasonableness.

potential creditors. After the Plaintiffs filed suit, Norton reduced the amount in the stable value fund when the Norton Healthcare Fixed Income Option ("NHFIO") was created. At year-end 2019, the Plan had $76,247,516 in the NHFIO. That shifted $113,157,996 into investments that won't be impacted by any potential financial woes for Principal – a significant improvement.

On February 1, 2019, the Plan also transferred the investments from the PFIGO to mutual funds and a new product: the NHFIO. (See Tobe Report ("Report"), Exhibit 2). The changes to the crediting rate described in the Report has since 2019 led to an additional $800,000 to $900,000 being put into the Plan every year. The use of Target Date funds also has created an additional $2 million per year in savings.

When viewed against the Plan's improvements, the $5.75 million in direct monetary relief is even more impressive. More than $100 million of Plan assets have been moved into highly secure investments and the Plan changes will result in $25-35 million or more in savings over the next decade. *Id*.

*Class Member Reaction*

On May 14, 2021, Analytics LLC sent 35,434 notices to Class members. The objection deadline is July 3, 2021. Of those over thirty-five thousand notices,, only 384 were undeliverable. Analytics traced all 384 undeliverable notices and were able to locate one new and correct address. Notice was promptly sent to that class member. Exhibit 3. As of today, no Class members have objected to any portion of the settlement.

**ARGUMENT**

"[P]ublic policy strongly favors settlement of disputes…." *Robinson v. Shelby County Bd. of Educ.*, 566 F.3d 642, 648 (6th Cir. 2009) (citations omitted). This is especially true in class

action litigation. Class actions are "notoriously difficult and unpredictable" and can become a serious drain on judicial and party resources. *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003), citing *Granada Investments, Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992).

There is also a strong presumption that a class action settlement is fair and reasonable when it is the result of arm's-length negotiations. *In re Amazon.com, Inc., Fulfillment Ctr. Fair Labor Standards Act (FLSA) & Wage & Hour Litig.*, No. 3:14-CV-290-DJH, 2016 WL 9558953, at *2 (W.D. Ky. Oct. 31, 2016), citing Newberg on Class Actions § 13:43 (5th ed. 2016).

The Sixth Circuit has identified seven factors for evaluating the fairness of class action settlements: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Gascho v. Glob. Fitness Holdings*, LLC, 822 F.3d 269, 277 (6th Cir. 2016).

## VI. ALL RELEVANT FACTORS FAVOR APPROVAL

### a. The Parties Negotiated at Arm's Length and There is No Risk of Fraud or Collusion.

"Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Leonhardt v. ArvinMeritor, Inc.*, 581 F.Supp.2d 818, 838 (E.D. Mich. 2008); see also *In re Telectronics Pacing Sys.*, 137 F.Supp.2d 985, 1016 (S.D. Ohio 2001) [**25] (citing Herbert Newberg & Alba Conte, Newberg on Class Actions § 11.51 (3d ed. 1992)) ("Courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered.").

The Parties here negotiated extensively over the course of nearly a year with the help of John Van Winkle, a nationally renowned mediator. Courts have recognized that "[t]he participation of an independent mediator in the settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties." *Dewald v. Time Warner Cable Inc.,* 2021 U.S. Dist. LEXIS 32459, *9 (S.D. Ohio 2021) (citations omitted).

As indicated above, in this case the Parties had two mediation sessions. The Parties held their first mediation on February 27, 2020. Roughly 20 individuals attended this session, including insurance adjusters, internal compliance employees for the Defendants, attorneys, and law clerks. At this mediation the Plaintiffs gave a detailed presentation of the bases for their claims, and the Defendants responded. After several hours, the Parties decided to break for the day to exchange more discovery (this discovery will be detailed in a later section). On November 11, 2020, the Parties reconvened for a second full day session via Zoom. After roughly ten hours, the Parties reached an acceptable figure.

The Settlement also lacks the kind of provisions that can trigger collusion concerns. "[I]f the terms of the proposed settlement are fair, then the court may assume the negotiations were proper." *Bowling v. Pfizer, Inc.*, 143 F.R.D. 141, 152 (S.D. Ohio 1992). The results achieved for the class in this instance are exceptional in comparison to other cases of this magnitude. See *supra* 5-6. That the Settlement was the product of extensive arm's length negotiations without collusion, weighs in favor of approval of the Settlement.

### b. The Complexity, Expense, and Likely Duration of the Litigation Weigh in Favor of Settlement.

The Sixth Circuit considers "complexity, expense, and likely duration of the litigation" in determining reasonability. *Does 1-2 v. Deja Vu Servs., Inc*., 925 F.3d 886, 898 (6th Cir. 2019).

The more complicated, expensive, and long a case is, the more the parties can become entrenched. And the parties end up using a great deal more in terms of judicial resources. Class actions have value to society at large, "both as deterrents to unlawful behavior—particularly when the individual injuries are too small to justify the time and expense of litigation—and as private law enforcement regimes that free public sector resources." *Gascho*, 822 F.3d at 287. "[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *New York State Teachers' Ret. Sys. v. Gen. Motors Co.,* 315 F.R.D. 226, 241 (E.D. Mich. 2016), *aff'd sub nom. Marro v. New York State Teachers' Ret. Sys.*, 2017 U.S. App. LEXIS 24073 (6th Cir. Nov. 27, 2017).

This case had the potential to become expansive, expensive, and be on the Court's docket for quite some time. This case contained an issue of first impression about stable value funds, as the Court noted in its opinion denying the Defendants' respective motions to dismiss. DN 66 at 10-17. Expert fees in average ERISA class actions can easily run into the mid-six figures, and due to this case's unique posture there was no reason to think this case would not have been even more expensive. It has been Class Counsel's experience that expenses can run into the millions in these kinds of cases.

Even if the Plaintiffs prevailed at trial, there would be further delay at the appellate level. The Defendants here adamantly denied any wrongdoing and were prepared to vigorously defend their decisions about the Plan.

The excellent results obtained for the class without the necessity of a trial, while at the same time limiting the amount of expenses in such a complex case, serve further as grounds for finding the settlement to be reasonable.

### c. The Parties Engaged in Enough Discovery for the Plaintiffs to Sufficiently Evaluate the Case.

This is a flexible factor, because the amount of discovery needed to sufficiently evaluate a case is inherently going to depend on the case's specific contours. The important question is whether enough discovery has taken place for Class Counsel to sufficiently evaluate the case. "What matters is not the amount or type of discovery class counsel pursued, but whether they had developed enough information about the case to appreciate sufficiently the value of the claims." *In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 439 (3d Cir. 2016). What really matters here is that the settlement cannot be the product of "uneducated guesswork…" *Olden v. Gardner*, 294 Fed. Appx. 210, 218 (6th Cir. 2008)(citing to *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981)).

Prior to filing the lawsuit, Class Counsel began informal discovery. Information about 403(b) plans is available publicly through the United States Department of Labor. Class Counsel reviewed thousands of pages of documents prior to filing, including Norton's annual Form 5500s, mutual fund prospectuses, and other publicly available documents.

Once the Court denied the motions to dismiss, the Defendants "threw the doors open," so to speak, and the Parties undertook a cooperative information exchange. The Defendants provided roughly 6,000 pages related to the Plan. These documents included fee summaries, meeting minutes, presentations by recordkeepers, service agreements, plan amendments, expense allocations, contracts between Norton and Lockton, requests for proposals, and various other documents. These documents cut directly to the heart of the matter, and the Parties' cooperative approach avoided lengthy, expensive (and famously wasteful) discovery disputes and production of unnecessary or irrelevant material.

Courts have praised this kind of approach because it preserves party and judicial resources. *See e.g., Sheick v. Auto. Component Carrier LLC*, 2010 U.S. Dist. LEXIS 110411, *53, n. 3 (E.D. Mich. 2010) (citing to *Cotton v. Hinton*, 559 F.2d 1326, 1332 (5th Cir. 1977) ("Being an extra judicial process, informality in the discovery of information is desired")). The significant, relevant, and cooperative discovery exchanged by the parties in this case weighs in favor of approval of the settlement. See also, *Griffin v. Flagstar Bancorp, Inc*., 2013 U.S. Dist. LEXIS 173702, *11-12, 2013 WL 6511860 (E.D. Mich. Dec. 12, 2013) (even a total "absence of formal discovery" would be acceptable so long as counsel had "a full understanding of the strengths and weaknesses of their case").

### d. The Settlement is Reasonable Given the Likelihood of Plaintiffs' Claims and the Existence of Defendants' Defenses.

"[T]he most important of the factors to be considered in reviewing a settlement is the probability of success on the merits." *Deja Vu Servs., Inc*., 925 F.3d 886 at 895, citing *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C*., 636 F.3d 235, 245 (6th Cir. 2011). The Settlement represents an excellent recovery in light of both the strength of Plaintiffs' claims and the strength of Defendants' defenses. Three specific factors in this case are particularly important.

First, as the Parties recognized during the motion to dismiss briefing, this case was about whether Norton engaged in a prudent process in selecting and monitoring investments and structuring the Plan. (DN 31-32; 38-39; 44-46). So long as the Defendants "engaged in a reasoned decision[-]making process, consistent with that of a prudent man acting in [a] like capacity," the ultimate results are irrelevant. *Pfeil v. State St. Bank & Trust Co*., 806 F.3d 377, 384 (6th Cir. 2015). Put another way, so long as an ERISA defendant "appropriately *investigate[s] the merits*

11

*of an investment decision prior to acting,*" it does not really matter what ultimately happens to the Plan. *Id.* at 385 (emphasis original) (citations omitted).

While the Plaintiffs have maintained that they have strong claims, the fact remains that courts have typically held that if ERISA defendants "act reasonably," i.e., they "easily clear [the] bar" and avoid liability. *Id.* Class Counsel would be remiss to pretend that this was not a significant legal obstacle to ultimately recovering funds for the Class. The discovery in this case focused on the Defendants' process, so Class Counsel could expeditiously ascertain how the Defendants made decisions.

The documents the Defendants provided showed that the Defendants were routinely meeting to discuss the Plan, doing various legal updates, and frequently discussing changes. The Defendants were likely to argue that this evidence showed they were actively monitoring the Plan and acting reasonably throughout. Losing on summary judgment or at trial or on appeal were risks.

Second, this case's claims focused primarily on two major flaws in the Plan: excessive fees and selecting and maintaining the PFIGO. As far as Class Counsel is aware, only one 403(b) excessive fee case has gone to trial in American history. *Sacerdote v. New York Univ.,* 328 F. Supp. 3d 273 (S.D.N.Y. 2018). The plaintiffs lost. *See id.* The settlement in this case more than accounts for the strongest specific claim, which was the Defendants' failure to select lower priced institutional share classes opposed to higher priced retail share classes of the same mutual funds. The Plaintiffs' original complaint noted that the damages for that claim were roughly $3 million and the monetary settlement is almost double that. (DN 1).

Finally, the Plaintiffs' largest claim damage-wise was for claims related to the PFIGO. As noted above, those damages have been largely mitigated by the Plan's changes. But the other obstacle here was the fact that this was a brand-new kind of claim. As the Court noted in its

opinion denying the motions to dismiss, "[n]either party has identified—nor has the Court located—a case with allegations paralleling Plaintiffs' claims with regard to the Principal Fixed Income Option." *Disselkamp v. Norton Healthcare, Inc.*, 2019 U.S. Dist. LEXIS 129519, *25 (W.D.Ky. 2019).

A common saying where the undersigned grew up is that "the first one through the door is the one that gets shot." The Plaintiffs and Defendants here both seemed to recognize this. As opposed to putting no value on a brand-new kind of claim, the Defendants modified their Plan and offered significant monetary relief to end the dispute. And, as opposed to blindly plowing ahead, Class Counsel recognized the value being made available. The recovery to the Plan here compares favorably to similar cases. Turning down a favorable settlement offer under the circumstances would have been a questionable decision at best.

    e. **The Opinions of Class Counsel and Class Representatives, and the Reaction of Absent Class Members, Support Approval.**

Counsel on both sides are experienced and thoroughly familiar with the factual and legal issues presented. Class Counsel and counsel for Defendants believe that this Settlement is fair and reasonable. The opinion of experienced and informed counsel is entitled to considerable weight. *New York State Teachers' Ret. Sys.*, 315 F.R.D. at 238.

The Class' reaction also weighs heavily in favor of approval. As indicated above, on May 14, 2021, the Class Administrator, Analytics LLC, sent notice to 35,434 class members. Of those only 384 were undeliverable. Analytics traced all 384 undeliverable notices and were about to locate one new and correct address. Notice was promptly sent to that class member.

As of today, no Class Member has filed any objection to any aspect of the Settlement. This is noteworthy because the notice program in this case was extremely successful. Settlement. Analytics Decl., ¶¶ 5–10. Ninety-nine-point-nine percent (99.9%) of Class Members have

received notice. This kind of "unanimous approval is entitled to great weight" and weighs heavily in favor of approval. *Griffin,* 2013 U.S. Dist. LEXIS at *15.

## IV. FINAL CERTIFICATION OF THE SETTLEMENT CLASS

On March 1, 2021, this Court preliminarily certified the Settlement Class. DN 120. The Court also appointed Plaintiffs Donna Disselkamp, Erica Hunter, Sey Momodou Bah, Kathy Reed, and Curtis Cornett as the representatives of the Settlement Class. Plaintiffs now seek that the Court unconditionally certify the class for settlement purposes under Federal Rule of Civil Procedure 23(b)(1).

Under Rule 23, the Court must engage in two-step analysis to determine whether to certify the case as a class action for settlement purposes. The proposed class must meet the four requirements of Rule 23(a), and then one of the requirements of Rule 23(b). Fed. R. Civ. P. 23. Certification is appropriate if the court finds, "after conducting a rigorous analysis, that the requirements of Rule 23 have been met." *Glazer v. Whirlpool Corp.* (*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*), 722 F.3d 838, 851 (6th Cir. 2013). The Court only need consider "evidence presented by the parties concerning the maintainability of the class action." *Id.*

Plaintiffs submit that the four factors enumerated in Rule 23(a) as set forth in their initial Memorandum in Support of the Conditional Class Certification (DN 96-1) remain applicable and are unchanged. As for the requirements in Rule 23(b), Plaintiffs sought to have this case certified under Rule 23(b)(1) in that the Defendants' fiduciary duties owed to the Plan are the same duties owed to everyone who has participated in the Plan. In discharging its duties to the Plan, the Defendants were obligated to treat all participants (hence all class members) alike.

Since March 1, 2021, when this Court preliminarily certified the class, nothing has changed that would cause the analysis conducted by this Court to reach a different conclusion. Plaintiffs request that this Court approve the final certification of the Class for settlement purposes.

## V.     CONCLUSION

For all of the reasons set forth above it is respectfully submitted that this Court should enter the attached, order granting final approval of the Stipulation of Settlement and final certification of the Class.

*/s/ John S. Friend*
John S. Friend
Robert W. "Joe" Bishop
Lauren E. Freeman
Bishop Friend, PSC
6520 Glenridge Park Place,
Suite 6
Louisville, KY 40222
firm@bishoplegal.net


Frank H. Tomlinson
Tomlinson Law, LLC
2100 First Avenue North
Suite 600
Birmingham, Alabama 35203
hilton@tomlawllc.com

James H. White, IV
James White Firm, LLC
2100 First Avenue North
Suite 600
Birmingham, AL 35203
james@whitefirmllc.com

Counsel for the Plaintiffs